NOTICE
Decision filed 03/09/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240927-U

NO. 5-24-0927

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 24-CF-192 |
| | ) | |
| CHRISTOPHER PEOPLES, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The defendant's argument that he was denied a fair and impartial trial based on a biased prospective juror is waived. In addition, the defendant failed to prove claims of ineffective assistance of counsel, first-prong plain error, and second-prong plain error. We affirm.

¶ 2    Following a jury trial, the defendant, Christopher Peoples, was found guilty of one count of criminal trespass to residence (720 ILCS 5/19-4(a)(2) (West 2022)) and one count of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022)). The defendant was found not guilty of one count of residential burglary (720 ILCS 5/19-3(a) (West 2022)). The defendant was sentenced to the Illinois Department of Corrections for five years on the criminal trespass to residence, and five years on the domestic battery charge, to run concurrently. On appeal, the defendant claims that he was denied a fair and impartial trial where (1) a juror indicated during *voir dire* that he was biased

1

and (2) the police officer testified that the reason he was dispatched to the scene of the disturbance was due to a violation of an order of protection and the officer also testified that he had prior contacts with the defendant. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4      In the early morning of April 22, 2024, a dispute occurred between the defendant and his ex-girlfriend, the victim, Kasi Taulbee. Taulbee lived with her son and dog in Mattoon, Illinois. The defendant lived primarily with his mother, whose home was next door to Taulbee. The couple had an on-and-off-again relationship that ended in February 2024. On April 22, 2024, at approximately 2 a.m., Taulbee left a friend's house, went to a gas station, and subsequently arrived home. Taulbee received several phone calls that early morning from the defendant who indicated to Taulbee that she should not be out at 2 a.m. and that she should be at home. When Taulbee did arrive home at 2:22 a.m., the defendant was standing in front of her house and walked up to her car as she pulled into the driveway. The defendant attempted to speak with Taulbee, but she told the defendant to leave. Taulbee entered her home through the porch door using a keypad and shut the door behind her. She then walked into the bedroom. Approximately a minute later, Taulbee heard the door leading into her home open and she saw the defendant enter. Taulbee told the defendant to leave, but the defendant entered Taulbee's bedroom and pushed her onto her bed on her back. Taulbee tried to get up but the defendant held her down with his hands. Taulbee tried to push the defendant off of her and she told him again to leave. Eventually, after a struggle, the defendant released Taulbee, who threatened to call the police. The defendant then left through the back door. After the defendant left, Taulbee realized that the lanyard she wore around her neck was gone. This lanyard held several keys, including her car key fob. She searched her house for the missing lanyard but could not find it. Taulbee called the police. When the police arrived,

2

Taulbee showed them video footage from surveillance cameras that she had previously positioned outside and inside her residence.

¶ 5    On April 22, 2024, the defendant was charged by information with a total of three counts stemming from the incident between the defendant and Taulbee. The information as to count I charged the defendant with residential burglary in that the defendant, "knowingly and without authority, remains [*sic*] within the dwelling of Kasi Taulbee, *** with the intent to commit therein a theft." Count II charged the defendant with criminal trespass to a residence in that the defendant "without authority, knowingly entered the residence of another, namely Kasi Taulbee, *** and knew or had reason to know that one or more persons was present." In count III, the defendant was charged with domestic battery in that the defendant "knowingly made physical contact of an insulting or provoking nature with Kasi Taulbee, a family or household member, in that Defendant grabbed Kasi Taulbee's upper body forcing her onto a bed and held her down, and Defendant has a prior conviction for Domestic Battery ***."

¶ 6    The public defender was appointed to represent the defendant. Prior to trial, the defense moved to bar the admission of the defendant's prior convictions and pending charges.[1] The State objected to the motion. The trial court scheduled a hearing to address the defendant's motion *in limine* to exclude the use of the defendant's prior convictions and pending cases. Prior to the hearing, the State filed a motion to allow impeachment evidence using the defendant's prior convictions and a motion to admit evidence of other crimes in a domestic violence case.

---

[1]In his motion, the defendant identified two prior convictions in Coles County for "Aggravated Battery Strangulation, Class 3 Felony, [and] Domestic Battery with Prior, Class 4 Felony." The motion also indicated the defendant had pending cases in Coles County that included, "Resist Police Officer, Class A Misdemeanor, Possession of Methamphetamine, Class 3 Felony, Domestic Battery, Class 4 Felony, Fleeing an Officer, Class A Misdemeanor, Violation of Bail Bond, Class A Misdemeanor, [and] Poss Adult Use Cannabis, Class B Misdemeanor."

¶ 7      Following arguments on the defendant's motion *in limine* to exclude evidence and arguments on the State's motion to admit impeachment evidence of the defendant's prior convictions, the trial court granted the defendant's motion to exclude the evidence of prior convictions and pending charges and denied the State's motion to introduce the defendant's prior convictions for impeachment. The trial court then heard arguments on the State's motion to admit evidence of other crimes in a domestic violence case. The trial court denied the State's motion.

¶ 8      A jury was selected on June 11, 2024. During *voir dire*, a prospective juror raised his hand when the trial court asked if there was any reason why anyone did not believe that they could be a fair and impartial juror. The prospective juror explained that "about a year ago, I had to call the police for a neighbor who was screaming for help and I believe it was breaking and entering and possibly domestic violence." The prospective juror further stated, "when you were laying out this case, it felt fairly similar, so. There may unfortunately be some bias there." After concluding the questioning of all the potential jurors, the trial court began hearing requests for the dismissal of individual prospective jurors for cause. The first panel of four individuals considered included the same prospective juror that had initially raised the concern of bias. Defense counsel requested that the prospective juror be dismissed for cause because this individual had additionally indicated that he would have bias based on his grandfather's position as a police officer and that the prospective juror was raised to appreciate police. The State argued that the prospective juror indicated that he could be impartial, wait until the conclusion of all the evidence to form an opinion, and that he could base his opinion on the evidence presented. The trial court denied the defendant's request to dismiss the prospective juror for cause. The defendant did not elect to use a peremptory challenge to strike the prospective juror. This individual was selected as one of the jurors for defendant's case. The defendant's trial began later that day and continued to June 12, 2024.

¶ 9       At trial, the State called Taulbee, her 16-year-old son, J.A., and the responding officer, Chase Kull, who was a lieutenant with the Mattoon Police Department. Taulbee testified she was not home in the early morning of April 22, 2024, but the defendant called her several times. When she arrived home, the defendant was in her driveway and approached her as she drove in. Taulbee went inside her home and closed the door behind her. The defendant entered the house without Taulbee's permission and Taulbee told the defendant to leave. He followed her into her bedroom. A scuffle ensued and the defendant pushed Taulbee onto her bed and held her down, as she tried to get up and get free. Taulbee told the defendant that she would call the police if he did not leave and the defendant left. Taulbee realized that the lanyard she kept around her neck that had her car keys on it was gone and she called the police. Once the police arrived, Taulbee showed them surveillance footage from cameras she had placed inside and outside of her home. Taulbee agreed that the video presented at trial was a true and accurate copy of the surveillance footage from April 22, 2024. The trial court entered the video into evidence as People's Exhibit 1 and played it for the jury. On cross-examination, Taulbee confirmed that she had been in a prior relationship with the defendant. Further, Taulbee stated that since the termination of their relationship, the defendant had been to her residence multiple times and had stayed there overnight. Taulbee acknowledged that she suffered no injuries and there was no damage to her house or clothes.

¶ 10      Taulbee's son, J.A., testified briefly that he knew the defendant. Further, he indicated that the defendant had occasionally slept at their house overnight. The defendant, however, never lived with them.

¶ 11      Next, the State called Lieutenant Kull with the Mattoon Police Department. Kull testified that he was dispatched to Taulbee's residence for a violation of an order of protection. When he arrived, he spoke with both J.A. and Taulbee. Taulbee told Kull that she was missing her keys and

5

Kull attempted to locate the keys unsuccessfully. Taulbee provided Kull with surveillance footage from inside and around her home. Kull testified that he had "prior experience" with the defendant, and he knew that the defendant lived next door. Specifically, Kull stated, "I'm familiar because I have been there for Mr. Peoples in that room before and knew him to stay back there," referring to the defendant's home next door. After Kull spoke with "the lady" who lived next door, she informed Kull that the defendant "stays around back." Kull "went to the back of the home, but there was no answer." On cross-examination, defense counsel elicited testimony from Kull that confirmed Kull had previous encounters with the defendant and was aware that he lived in a room at the back of the house next door to Taulbee. After Kull's testimony the State rested.

¶ 12    The defense made a motion for a directed verdict, but that motion was denied. The defense then called Jacqueline Peoples, the defendant's mother. Jacqueline testified that the defendant lived with her and that he stayed in a room at the back of the house which had a separate entrance. She indicated that the defendant and Taulbee had an "on and off" again relationship. She stated that the defendant spent a lot of time at Taulbee's residence, cooked there, walked the dog, and kept clothes at Taulbee's home. Oftentimes, when they would cook, the defendant brought her dinner. On cross-examination, Jacqueline stated that she was not aware that the defendant and Taulbee had broken up. Further, she testified that the defendant was not at her home when the dispute occurred, and she told the police that the defendant was not home when the police came to look for him.

¶ 13    After the defendant was admonished by the trial court and acknowledged his understanding of his rights, he elected to testify. The defendant stated that he was living with Taulbee at the time of the dispute. The defendant testified that he helped around the house with renovations, that he often cooked at Taulbee's home, and that he frequently walked the dog. He described property that

6

he kept at Taulbee's house such as tools, clothes, his toothbrush, statues, and tapestries. On cross-examination, the defendant testified that on the night of the dispute, he was not dating Taulbee. The defendant agreed that Taulbee told him to get off her property and she shut the door. He then admitted that he went inside the home "anyways." The defendant asserted that he did not push Taulbee down on the bed. Rather, he claimed that the video showed that he "slipped on the carpet" and lost his footing. He stated that he was holding her arms "to calm her down." The defendant denied taking Taulbee's keys when he left. After a brief redirect examination, the defense rested. The jury was excused and the defense renewed their motion for a directed verdict. The trial court denied the motion.

¶ 14    A jury instruction conference was held and the next day, the parties gave their closing arguments. Following jury deliberations, the defendant was found not guilty of residential burglary, guilty of criminal trespass to a residence, and guilty of domestic battery.

¶ 15    On July 9, 2024, defense counsel filed a motion for acquittal or in the alternative a motion for a new trial. This motion alleged the following claims relevant to this appeal: the trial court erred during jury selection in denying the defendant's request to strike three jurors for cause; and the State violated the trial court's order *in limine* barring reference to the defendant's unrelated pending criminal charges and the defendant's prior criminal history when Kull testified that he responded to a "no contact violation" situation, and that he was familiar with the defendant because he had been to the defendant's mother's residence on other occasions, which indicated a criminal history.

¶ 16    On July 15, 2024, the defendant filed a *pro se* postconviction petition. On July 16, 2024, the trial court held a hearing to address the defendant's petition. The trial court found that the petition alleged ineffective assistance of counsel. Upon consideration of the petition, the trial court

vacated the appointment of the defendant's trial counsel and appointed new counsel (posttrial counsel) to address the defendant's petition and file any posttrial matters. Posttrial counsel filed an amended motion for acquittal or in the alternative motion for a new trial on July 26, 2024. The amended motion alleged the same claims from trial counsel's motion and included three additional claims of ineffective assistance of trial counsel. Posttrial counsel's amendments did not include the claims of ineffective assistance of trial counsel as alleged in this appeal.

¶ 17    On August 9, 2024, the trial court heard and denied the defendant's amended posttrial motion. The trial court then proceeded to the defendant's sentencing hearing. Evidence in aggravation was argued and the trial court received several letters offered on behalf of the defendant in mitigation. The defendant's mother testified in mitigation and the defendant made a statement in allocution. Ultimately, the trial court sentenced the defendant to five years' imprisonment for criminal trespass to residence and five years' imprisonment for domestic battery, with the sentences to be served concurrently. The defendant now appeals.

¶ 18                                      II. ANALYSIS

¶ 19    On appeal, the defendant first claims that he was denied a fair and impartial trial because during *voir dire* a prospective juror informed the trial court that he may have a bias with regard to the facts of the case. Specifically, the defendant alleges that the prospective juror was biased due to an unrelated incident where he had called the police on behalf of a neighbor who was allegedly the victim of offenses similar to the ones for which the defendant was being prosecuted. The defendant argues that the trial court abused its discretion by not dismissing this prospective juror for cause, that the defendant's trial counsel was ineffective for not using a peremptory challenge to strike this individual, and that defendant's posttrial counsel was ineffective for not amending the posttrial motion to allege that trial counsel was ineffective.

¶ 20    In addition, the defendant alleges that the testimony of Lieutenant Kull, elicited by the State, violated the trial court's order granting the defendant's motion *in limine* that excluded evidence of the defendant's prior convictions and pending cases. The defendant essentially argues that Kull's testimony, in violation of the order, constituted reversible error. In the alternative, the defendant asks this court for review under the plain-error doctrine as to both claims.

¶ 21                           A. Refusal to Dismiss Juror for Cause

¶ 22    The decision of whether to dismiss a potential juror for cause rests within the sound discretion of the trial court, and it will not be disturbed absent an abuse of discretion. *People v. Tondini*, 2019 IL App (3d) 170370, ¶ 18. A trial court abuses its discretion when its ruling is "arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *Tondini*, 2019 IL App (3d) 170370, ¶ 18. The trial court is in the best position to observe a potential juror's behavior and to determine the meaning behind his or her statements. *People v. Williams*, 173 Ill. 2d 48, 67 (1996). However, the refusal of the trial court to remove a juror for cause is grounds for reversal only if the defense has exercised all of its peremptory challenges and the juror was allowed to sit on the jury. *People v. Walls*, 2022 IL App (1st) 200167, ¶ 42.

¶ 23    Here, a panel of four prospective jurors was selected for consideration by the parties. The juror about whom the defendant now complains was a member of this first panel. The State and the defendant had the opportunity to ask the trial court to dismiss prospective jurors for cause from this panel. If the trial court denied the request, either party had the alternative option of using a peremptory challenge to remove an individual venireman deemed not suited for their case. The defendant claims that the trial court erred when it failed to grant the defendant's motion to excuse one of the prospective jurors for cause, as this juror was biased. The record reveals that once the

9

trial court denied the defendant's motion, defense counsel did not use a peremptory challenge to strike the prospective juror, even though defense counsel had several peremptory challenges that he had not yet used. In fact, after the trial court denied the defendant's motion to remove the juror for cause, defense counsel paused to confer with the defendant. After that private discussion, defense counsel indicated to the trial court that the defense would use two peremptory challenges to strike prospective jurors two and four from this first panel. These challenges did not include the allegedly biased juror, who was allowed to remain on the panel. After these other prospective jurors were stricken, two more potential jurors were added to the first panel and the newly constituted panel with the allegedly biased prospective juror was allowed to remain. This first panel was then accepted by the parties to hear the defendant's case, thus allowing the allegedly biased prospective venireman to act as a juror in the defendant's case. The defendant's argument that he was denied a fair and impartial trial based on a biased prospective juror is thus waived and we will not consider the defendant's arguments on its merits. *People v. Redmond*, 357 Ill. App. 3d 256, 258 (2005).

¶ 24          B. Ineffective Assistance of Counsel as to Jury Selection

¶ 25    The defendant attempts to avoid waiver by asking this court to find that his trial counsel was ineffective for not using a peremptory challenge on the biased juror and that posttrial counsel was ineffective for not amending the posttrial motion to allege trial counsel's ineffectiveness.

¶ 26    A criminal defendant has a constitutional right to effective assistance of counsel at all stages of the proceedings as guaranteed by the sixth amendment. *People v. Brown*, 2017 IL 121681, ¶ 25. To establish an ineffective assistance of counsel claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, the result would have been different. *Strickland v. Washington*,

466 U.S. 668, 687 (1984). Simply put, two prongs make up the *Strickland* test: deficiency and prejudice. First, counsel must have made errors so serious, and counsel's performance was so deficient, that counsel was not operating as the "counsel" guaranteed by the sixth amendment. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Evans*, 186 Ill. 2d at 93. The defendant bears the burden of showing that both prongs of the *Strickland* test are proved. *People v. Morris*, 2014 IL App (1st) 130512, ¶ 32.

¶ 27    Generally, trial counsel's actions during jury selection are considered a matter of trial strategy. *People v. Manning*, 241 Ill. 2d 319, 333 (2011). A decision by trial counsel whether to use an available peremptory challenge is a matter of strategy. *People v. Bowman*, 325 Ill. App. 3d 411, 422 (2001). We review ineffective assistance of counsel claims *de novo*. *In re Harlin H.*, 2022 IL App (5th) 190108, ¶ 78.

¶ 28    The defendant argues that trial counsel was ineffective for failing to use a peremptory challenge on the prospective juror who the defendant claims could not be fair and impartial because he had called the police in response to hearing the screams of a neighbor. The prospective juror indicated that he thought it was "possibly domestic violence," but did not know any of the details. He thought "[t]here may unfortunately be some bias there." While it is true this prospective juror indicated some hesitation at first, the record also reveals that this juror stated that he would "be able to hear the evidence and make a decision solely upon the evidence." Also, during *voir dire*, this same prospective juror stated that even though his grandfather had been a police officer, the juror did not believe this fact would interfere with his ability to hear the case and he felt no

11

obligation to anyone to explain himself if there was a not guilty verdict. Additionally, the record reveals that this juror was repeatedly asked during *voir dire* whether he could hear the evidence without regard to other influences in his life and he indicated he could be impartial and hear the evidence, making his decision solely on the evidence. Defense counsel did make a motion to strike this prospective juror for cause, but the trial court denied that motion. Defense counsel then conferred with the defendant. After this discussion, defense counsel used two peremptory challenges on venireman in the same panel as the allegedly biased juror. The defendant did not use a peremptory challenge to strike this prospective juror. Consequently, we find that the defendant has not overcome his burden of proving that defense counsel acted objectively unreasonable when he failed to exercise a peremptory challenge on the prospective juror at issue.

¶ 29    Trial counsel's decision not to use a peremptory challenge was a matter of trial strategy. The prospective juror indicated that he could be fair. When the trial court asked the entire group of prospective jurors whether they had any reason why they did not believe that they could be fair, the juror who defendant now claims caused his attorney to be ineffective initially raised his hand. This individual, however, also raised his hand along with all other prospective jurors, when asked if they could decide the case based on the law and evidence and without sympathy or prejudice. As previously noted, "decisions made during jury selection involve trial strategy to which courts should be highly deferential." *Manning*, 241 Ill. 2d at 333. Therefore, we conclude that under the circumstances, trial counsel's failure to use a peremptory challenge to excuse the prospective juror was a matter of trial strategy. As the defendant cannot satisfy the first prong of the *Strickland* test, further review of the defendant's ineffective assistance of trial counsel claim is not warranted as trial counsel's performance was not ineffective.

12

¶ 30    After trial, the defendant filed a "Pro Se Post Conviction (petition) motion." As a result of that motion, the trial court appointed posttrial counsel, who filed an amended motion for acquittal or in the alternative, motion for a new trial. The defendant claims that posttrial counsel was ineffective for failing to include in the defendant's amended posttrial motion that trial counsel was ineffective for failing to excuse the prospective juror who the defendant claims was biased.

¶ 31    Generally, posttrial counsel must also exercise his or her professional judgment regarding whether any claims raised by the defendant alleging that trial counsel was ineffective have merit. *People v. Harkey*, 2025 IL App (4th) 230523, ¶ 83. Newly appointed counsel is not obligated to present all of the nonfrivolous claims that the defendant contends show that his trial counsel was ineffective. *Harkey*, 2025 IL App (4th) 230523, ¶ 83. Claims of ineffective assistance of posttrial counsel, just as claims of ineffective assistance of trial counsel, are governed by the standards set forth in *Strickland*. *People v. Cherry*, 2016 IL 118728, ¶ 24.

¶ 32    Here, posttrial counsel did not include the claim of trial counsel's ineffectiveness based on the failure to use a peremptory challenge; however, there was no requirement that posttrial counsel include matters of trial strategy in the posttrial motion. We have found that trial counsel's failure to use a peremptory challenge on the prospective juror was a matter of trial strategy. Similarly, posttrial counsel was not objectively deficient for his failure to claim ineffective assistance of trial counsel where none existed. Therefore, the defendant cannot satisfy the first requirement of the *Strickland* test, and the defendant did not receive ineffective assistance from posttrial counsel.

¶ 33    Having found no ineffective assistance of counsel, the defendant alternatively claims that we should review his claim regarding the failure to receive a fair trial under the plain-error doctrine. As previously noted, the defendant's claim that he was denied a fair and impartial jury was waived when defense counsel failed to use a peremptory challenge on the prospective juror.

13

We need not review the defendant's claim under the plain-error doctrine, as waiver forecloses review under the plain-error doctrine of a claim predicated upon the waived right. *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 20.

¶ 34                                    C. Kull's Testimony

¶ 35    We turn next to the defendant's claim that the trial court's order on the motion *in limine* was violated when Lieutenant Kull testified that he responded to the scene for an order of protection violation and that he had previous encounters with the defendant. Prior to Kull's testimony, the trial court granted the defendant's motion *in limine* that excluded the introduction of evidence as to the defendant's prior convictions and pending cases.

¶ 36    The defendant concedes that the failure to object by trial counsel and the failure to preserve the issue by posttrial counsel rendered the issues forfeited. Therefore, the defendant asks this court to review the issues under both prongs of the plain-error doctrine.

¶ 37                                    i. Plain Error

¶ 38    The plain-error doctrine allows a reviewing court to reach a forfeited error under two circumstances. *People v. Moon*, 2022 IL 125959, ¶ 20. First-prong plain-error review is appropriate when a "clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *Moon*, 2022 IL 125959, ¶ 20. Under second-prong plain error, review is warranted when a "clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Moon*, 2022 IL 125959, ¶ 20. In both circumstances, the defendant bears the burden of persuasion. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 39    In the case at bar, the defendant claims that Kull's testimony violated the trial court's order when he testified that he was dispatched to the scene for a violation of a protection order and that he had prior encounters with the defendant. Under the first prong of plain-error review, we must initially determine whether Kull's testimony constituted an error. We find that Kull's testimony did violate the trial court's order *in limine*, constituting error. Therefore, we next consider whether the evidence against the defendant was closely balanced.

¶ 40    At trial, the State called Taulbee, her son J.A., and Kull. Taulbee gave her account of the incident and a surveillance video that was shown to the jury. The video substantiated Taulbee's testimony that the defendant had no right to enter her home, that she told him to leave, but nevertheless he pushed her down on the bed and held her down against her will. Taulbee's son, J.A., testified that the defendant did not live at his home. In addition, the defendant elected to testify during trial and admitted to entering Taulbee's home even after she told him to "get off my property." The evidence in this case was not closely balanced, and, instead, overwhelmingly substantiated the charges filed by the State. Although we find the defendant correctly asserts that Kull's testimony constituted error, the defendant has failed to carry his burden of establishing first-prong plain error as the evidence was not so closely balanced that the error alone threatened to tip the scales of justice. See *Moon*, 2022 IL 125959, ¶ 20.

¶ 41    The defendant next asks that we review Kull's testimony as reversible error under second-prong plain error. Second-prong plain error, however, is equated with structural error, which is the type of error that erodes the integrity of the judicial process and undermines the fairness of the defendant's trial. *People v. Johnson*, 2024 IL 130191, ¶ 55. Structural error occurs when an error is of such magnitude that it undermines the framework within which the trial proceeds, not just a mere error in the trial process itself. *Johnson*, 2024 IL 130191, ¶ 55.

15

¶ 42 Second-prong plain error is a high hurdle and is only implemented in exceptional circumstances where, despite the absence of an objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process. *Johnson*, 2024 IL 130191, ¶ 54. The structural errors identified by the United States Supreme Court and referenced by the Illinois Supreme Court include " 'a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction.' " *Johnson*, 2024 IL 130191, ¶ 57 (quoting *Moon*, 2022 IL 125959, ¶ 29).

¶ 43 Here, the defendant claims that second-prong plain error applies because Kull's testimony was exactly the type of evidence that the trial court decided was overly prejudicial and should not have been heard by the jury. Further the defendant claims that the elicitation by the State of Kull's testimony undermined the integrity and reputation of the judicial process.

¶ 44 As previously stated, we find that the testimony provided by Kull, in violation of the defendant's motion *in limine*, constituted error. Therefore, under second-prong plain-error review, we consider whether the error was so serious a violation that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.

¶ 45 We find that the testimony given by Kull was brief and was not so serious an error that the fairness of defendant's trial was affected or that the integrity of the judicial process was compromised. In fact, defense counsel questioned Kull on cross-examination about Kull's prior encounters with the defendant and Kull's knowledge of the defendant's living arrangement. Therefore, the defendant's claim of second-prong plain error does not meet the standard set forth in *Johnson* and must fail. *Johnson*, 2024 IL 130191, ¶ 57.

16

¶ 46                            ii. Ineffective Assistance of Counsel

¶ 47    The defendant alternatively claims that trial counsel was ineffective for failing to object to Kull's testimony and that posttrial counsel was ineffective for failing to preserve the error surrounding Kull's testimony in the defendant's amended posttrial motion. As previously stated, a defendant must meet both prongs of the *Strickland* test to achieve a successful ineffective assistance of counsel claim. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). The two-prong *Strickland* test requires that in order to establish an ineffective assistance of counsel claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, "but for" counsel's deficient performance, the result would have been different. *Strickland*, 466 U.S. at 687. In other words, the defendant must show deficient performance and that the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44. We do not, however, need to evaluate whether counsel's performance was deficient if we conclude that the defendant cannot show prejudice. *People v. Hale*, 2013 IL 113140, ¶ 17. To prove that the defendant suffered prejudice, "the defendant must show that, 'but for' counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Lacy*, 407 Ill. App. 3d 442, 457 (2011).

¶ 48    Here, Kull testified at trial that "[t]he original dispatch was a violation of order of protection." In addition, when Kull was asked about the steps that he took to locate the defendant on the night of the incident, he stated:

> "A. From prior—my prior experience with Mr. Peoples, I know he lives next door, so I went next door and spoke with the lady there and she advised he stays around back, appears to be like a sunroom or closed-in room now. I'm familiar because I have been there for Mr. Peoples in that room before and knew him to stay back there."

17

The defendant is correct that Kull's testimony violated the trial court's order on the defendant's motion *in limine*; however, the evidence against the defendant was substantial. We have already described the evidence offered to support the State's case against the defendant and found that it overwhelmingly substantiated the jury's verdict. The brief testimony of Kull does not negate the formidable evidence against the defendant produced at trial. The defendant has failed to show prejudice as he cannot demonstrate that there is a reasonable probability that the result of the proceeding would have been different if not for Kull's two statements. Because the defendant cannot carry his burden of showing that he was prejudiced under *Strickland*, we do not need to evaluate whether trial counsel or posttrial counsel were deficient in their performance.

¶ 49                                    III. CONCLUSION

¶ 50    For the forgoing reasons, we affirm the judgment of the Coles County circuit court.

¶ 51    Affirmed.